UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JACOB EDWARD ALLEN,<br><br>    Defendant. | Case No. 1:15-cr-00275-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendant Jacob Edward Allen's Motion to Dismiss the Indictment (Dkt. 22). Allen contends that the charges brought against him under 18 U.S.C. § 922(g)(4), for illegal possession of a firearm, are unconstitutional as applied in this case. For the reasons explained below, this Court will deny the motion.

## BACKGROUND

Allen is a thirty-six year-old Idaho citizen, born and raised in Valley County, Idaho. Allen has struggled with episodes of mental illness and has been involuntarily committed for psychiatric care on multiple occasions. The charges brought against him stem from his alleged possession of a firearm after having been involuntarily committed to a mental institution.

Allen's parents and sister submitted an application to have Allen committed for involuntary mental health treatment on April 29, 2011, *see Apr. 29, 2011 Application, Gvt. Ex. 1,* Dkt. 30-1, although the record does not indicate the ultimate outcome of that proceeding. *See Def's Br.* at 2, n.1, Dkt. 22. Allen's family submitted another application for involuntary commitment in March 2013, but that application was subsequently dismissed.  *See id., Ex. B thereto.* A third application was submitted on June 19, 2013, that the defendant, with the assistance of legal counsel, ultimately stipulated to. *See Order of Commitment-Jun. 19, 2013*, Dkt. 22-4.

The June 2013 commitment was brought pursuant to Idaho Code § 66-329 after a finding that the "patient is mentally ill and is in need of supervision, treatment, care and restraint" as well as that "due to such mental illness, the patient is likely to injure self and/or others and/or is gravely disabled." *Id.* The court classified Allen's mental illness as schizophrenia, which was diagnosed after Allen experienced "religious delusions" that caused him to hike into the wilderness for several days "without adequate clothing, food or water." *Certificate of Designated Examiner-Jun. 19, 2013*, at 2, Dkt. 22-2. The report also stated that Allen "denies that he has a mental illness and has not been taking his medication as prescribed." *Id.* After receiving care, Allen's commitment was terminated on July 18, 2013, after an Idaho Department of Health and Welfare examiner found that "the conditions justifying commitment no longer exist as defined in Section 66-317, Idaho Code." *Termination of Commitment-Jul. 18, 2013*, Dkt. 22-6.

Allen was committed again on July 20, 2015, after suffering another schizophrenic

episode. *Order of Commitment-Jul. 20, 2015*, Dkt. 22-7. The defendant was again represented by legal counsel. *Id.* The court found this time that Allen's mental illness required commitment because "the patient is likely to injure others." *Id.* However, Allen's commitment was again terminated on July 28, 2015, based on a finding that the "conditions justifying commitment no longer exist . . . ." *Termination of Commitment-Jul. 28, 2015*, Dkt. 22-8.

On September 8, 2015, staff at the Cascade Medical Center asked Valley County Sheriff's deputies to locate Mr. Allen and place him on a mental hold after he missed a scheduled psychiatric appointment. *Sheriff's Incident Summary*, at 2, Dkt. 22-9. The caller also stated that Allen "was not taking his medications and threatening his family." *Id.* Deputies received reports from at least two individuals who confirmed that Allen had been acting strangely and had made threats to harm them. *Id.* One witness reported that Allen had a .22 rifle and a muzzleloader rifle in his vehicle and had made a veiled threat against him. *See Sheriff's Office Report*, Dkt 30-3.

Later that day, deputies located Allen's truck and camper trailer parked near a roadway with the driver's door of the truck open. *Sheriff's Incident Summary*, at 3, Dkt. 22-9. Deputies found a bolt action .22 rifle in Allen's vehicle. *Id.* at 3–4. Deputies thereafter placed Allen in custody.

Allen once again stipulated to involuntary commitment on September 14, 2015, while being represented by counsel. *Order of Commitment-Sept. 14, 2015*, Dkt. 22-10. In addition to the involuntary mental commitment, a grand jury returned an indictment

charging Allen with one count of knowingly possessing a .22 caliber rifle, after having been adjudicated a mental defective or committed to a mental institution. *Indictment*, Dkt. 1. The charge was brought under 18 U.S.C. § 922(g)(4).

## ANALYSIS

Allen challenges the constitutionality of 18 U.S.C. § 922(g)(4), as applied to him, in three respects. First, he contends that the statute impermissibly restricts his Second Amendment right to possess weapons. Second, he says that the statute violates the Due Process Clause of the Fifth Amendment because it subjects him to criminal liability for otherwise "innocent" conduct without notice. Third, Allen contends that the statute violates the Fourteenth Amendment Equal Protection clause because it "irrationally discriminates between those committed federally and those committed through state proceedings." *Def's Br.* at 4, Dkt. 22-1.

**A.   Second Amendment**

When analyzing a citizen's challenge under the Second Amendment, the Ninth Circuit has adopted a two-step inquiry in which this Court first must determine whether the challenged law burdens conduct protected by the Second Amendment and, if so, "apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F. 3d 1127, 1136 (9th Cir. 2013).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the United States Supreme Court determined

that the Second Amendment generally confers "an individual right to keep and bear arms," and most specifically "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 F. 3d at 635.

However, the Supreme Court also recognized that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. The *Heller* Court went on to discuss certain areas of regulation that are presumed permissible:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons *and the mentally ill*, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626–27 (emphasis added). The Court clarified this statement in a footnote, explaining, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627, n.26. The Government cites this language to suggest that §922(g)(4) should be considered "presumptively lawful," whereas Allen asserts that the language is merely dicta and should have no bearing on this Court's decision.

The Ninth Circuit has previously relied upon the "presumptively lawful" *Heller* language to determine the constitutionality of firearm regulations. In *United States v. Vongxay*, 594 F. 3d 1111, 1115 (9th Cir. 2010), the Ninth Circuit expressly rejected the argument that the *Heller* "presumptively lawful" language was dicta, and instead relied on the Court's decision to uphold § 922(g)(1), which prohibits felons from possessing firearms. *Id.*

Allen cites to *United States v. Chovan*, 735 F. 3d 1127, 1137 (9th Cir. 2013), which applied intermediate scrutiny to a challenge to § 922(g)(9) (ban for those convicted of misdemeanor domestic violence), yet the court did so only after acknowledging that the prohibition at issue was not specifically addressed in *Heller*. Most recently, the Ninth Circuit rejected a challenge to California city ordinances which significantly restricted the ability for California citizens to obtain concealed carry permits, finding that the right to carry concealed weapons was not protected by the Second Amendment. *See Peruta v. County of San Diego*, 2016 WL 3194315, at *17 (9th Cir. Jun. 9, 2016) (en banc). The Ninth Circuit cited to language in *Heller* which questioned the applicability of Second Amendment rights to concealed weapons. *Id.* at *5–6. This Court therefore finds that *Heller*'s "presumptively lawful" language is persuasive, particularly given that the parties have provided no historical or scholarly basis to question the presumed constitutionality of firearm prohibitions for the mentally ill.[1] For this reason, rational-basis scrutiny—rather than a heightened review, such as intermediate scrutiny—is appropriate.

In fact, although Allen frames this issue as a Second Amendment challenge, § 922(g)(4) is more accurately viewed as a classification purely on the basis of mental disability. It is well established that legislation which creates distinctions on the basis of

---

[1] At least one scholar suggests that there is not a strong originalist argument regarding historic prohibitions on firearm possession by the mentally ill. *See generally* Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit,* 60 Hastings L.J. 1371, 1376-78 (2009). But even were this Court to consider the Second Amendment challenge under intermediate scrutiny, there likely would be sufficient reasoning to uphold § 922(g)(4). *See id.* at 1383.

cognitive ability must be merely "rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985). In *City of Cleburne*, the Court stated "that those who are mentally retarded have a reduced ability to cope with and function in the everyday world." *Id.* While Allen admits that the government has a "significant interest in keeping firearms out of the possession of those likely to use them to commit acts of violence," he disputes that there is a sufficient correlation between mental illness and gun violence to justify the § 922(g)(4) prohibition. *Def's Br.* at 14, Dkt. 22-1.

Allen cites a 2015 study published in the *Annals of Epidemiology* to challenge the justification underlying § 922(g)(4). *See* Jeffrey W. Swanson et. al, *Mental Illness and Reduction of Gun Violence and Suicide: Bringing Epidemiologic Research to Policy*, ANNALS OF EPIDEMIOLOGY, May 2015, 366, 367 (2015) available at http://www.annalsofepidemiology.org/article/S1047-2797(14)00147-1/pdf. The study indicates that prior adjudications for mental illness may not *perfectly* predict future violent behavior; however it is not an unrelated indicator.[2] Furthermore, the government's interest may be even more closely related when examining the correlation of mental illness and an individual's propensity for self-harm. *Id.* at 370 (CDC study

---

[2] "Analysis of ECA data from three sites (Baltimore, St. Louis, and Los Angeles, with a combined total of n ¼ 10,024 participants) identified a statistically significant but fairly modest positive association between violence and mental illness. The 12-month prevalence of any minor or serious violence among people with schizophrenia, bipolar disorder, or major depression was about 12% overall, and 7% in the subgroup with these disorders alone and no substance abuse comorbidity." *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

found "substantial proportion of suicide victims had identified mental health problems and a documented history of some psychiatric treatment"). In fact, the study concludes that while most outwardly violent behavior can be attributed to factors other than mental illness, "psychiatric disorders. . . are strongly implicated in suicide, which accounts for more than half of gun fatalities." *Id.* at 375. A firearm ban does not only serve the purpose of preventing violence against others, but saving lives in any manner possible. *See Washington v. Glucksberg*, 521 U.S. 702, 728 (1997) (government has an "unqualified interest in the preservation of human life").

Although discussed in greater detail in Part C of this Order, it should also be noted that remedies exist under both federal and state laws which allow those who have been adjudicated as "mentally defective" to restore their gun ownership privileges. *See* 18 U.S.C. § 922 note (NIAA § 101(c)(1)(A); § 105(b)). The fact that § 922(g)(4) does not necessarily amount to a lifetime ban, but can be tailored to the mental stability of the individual, further supports a finding of sufficient tailoring.

For these reasons, this Court concludes that § 922(g)(4) does not impermissibly infringe on Allen's Second Amendment rights because the statute is sufficiently related to a legitimate government interest.

**B.    Due Process**

Alternatively, Allen seeks to dismiss the charges against him on the basis that he had no notice or knowledge that his mental commitment "rendered his long-standing possession of a .22 rifle a criminal act." *Def's Br.* at 5, Dkt. 22-1.  Allen relies primarily

upon *Lambert v. People of the State of California*, 355 U.S. 225, 229 (1957) to support this argument. *Def's Br.* at 5, Dkt. 22-1. In that case, the Supreme Court held that a Los Angeles Municipal Code requiring convicted felons to register with the City was an unconstitutional violation of the Due Process clause. *Lambert*, 355 U.S. at 226. Critical to the Court's decision was the characterization that the infraction was "wholly passive" conduct stemming from the "mere failure to register." *Id.* at 228. The Court stated that the defendant was given "no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent" *id.* at 229, and, further, that "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." *Id.*

Allen asserts that the charges brought against him are also based upon "passive conduct," specifically the "failure to rid himself of a small caliber hunting rifle owned since childhood—without any notice that his civil commitment for mental illness rendered this otherwise innocent conduct criminal." *Def's Br.* at 6, Dkt. 22-1. However, *Lambert* should be viewed as an exception to the general rule, and is not applicable in this case.

*Lambert* notwithstanding, the general rule of law is that "ignorance of the law or a mistake of law is no defense to criminal prosecution." *Cheek v. United States*, 498 U.S. 192, 199 (1991).  The Ninth Circuit has generally rejected the *Lambert* doctrine when applied to firearm possession under § 922(g). *United States v. Hancock*, 231 F.3d 557, 564-64 (9th Cir. 2000) (possession after conviction of misdemeanor crime of domestic

violence); *United States v. Kafka*, 222 F.3d 1129, 1130 (9th Cir. 2000) (possession while subject to restraining order); *United States v. Indelicato*, 800 F.2d 1482, 1483 (9th Cir. 1986) (per curiam) (possession while under indictment); *United States v. Allen*, 699 F.2d 453, 458 (9th Cir. 1982) (felon-in-possession). Furthermore, the Ninth Circuit has explicitly stated that the *Lambert* exception is "narrow" and that the "Supreme Court has steadfastly resisted efforts to extend [its] reach." *Hancock*, 231 F. 3d at 564 (internal quotations omitted).

Although none of the above cases specifically address § 922(g)(4), the rationale underlying the decisions is persuasive. The *Heller* Court's recognition of the "longstanding prohibitions on the possession of firearms by felons and the mentally ill . . ." further supports a finding that Allen had sufficient notice that he was not permitted to possess a firearm. *Heller*, 554 U.S. 570, 626 (2008). The Ninth Circuit has held that "possession of firearms is 'active' conduct, as distinct from the 'wholly passive' failure to register that was at issue in *Lambert*." *Hancock*, 231 F. 3d at 564. As a gun owner, Allen has "knowingly subjected himself to a host of state and federal regulations." *Id.* Although the Government has the duty of proving that Allen "knowingly" possessed the firearm, "[t]his knowledge requirement applies only to the act of possession, not to the *prohibition* on possessing firearms." *Kafka*, 222 F. 3d at 1131 (emphasis added).[3]

---

[3] Any alleged deficiency regarding notice (or a lack thereof) provided to Allen regarding the termination of his rights following his involuntary commitment would arise out of the relevant Idaho

Allen's involuntary commitments on at least two prior occasions were sufficient notice that he may not legally own firearms pursuant to federal law, at least in order to satisfy the *Cheek* standard that "ignorance of the law" is not a defense. *Cheek*, 498 U.S. at 199; *see also Order of Commitment-Jun. 19, 2013*, Dkt. 22–4; *Order of Commitment-Jul. 20, 2015*, Dkt. 22-7. On both occasions, Allen was involuntarily committed because he posed a danger to himself and others. *See id.* Just as in *Kafka*, where the defendant was not explicitly instructed that his prior sentence forbade him from possessing a firearm, Allen was given full judicial proceedings regarding his mental competence so as to provide sufficient basis to forfeit his right to possess firearms.

## C. Equal Protection

Allen also alleges that § 922(g)(4) denies him "equal protection of the law" on the basis that the law "creates two impermissible distinctions between those adjudicated a mental defective by Idaho and those adjudicated a mental defective by the federal government." *Def's Br.* at 17, Dkt. 22-1. Allen argues that the "NICS Improvement Amendments Act of 2007" ("NIAA") alters federal law in such a way that had Allen been adjudicated as a "mental defective" by a federal agency, he may not have qualified under § 922(g)(4). *Id.; see also* Pub. L. No. 110-180, § 101(c)(2)(B). However, Allen's argument ignores analogous relief that is available under state law, which provides him

---

laws, not the statute criminalizing the possession of firearms when already a prohibited person. However, Allen has not provided any evidence by which this Court may question his prior mental adjudications.

**MEMORANDUM DECISION AND ORDER - 11**

equal protection under the law.

The Fourteenth Amendment Equal Protection clause requires that "no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439 (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). While courts may require more exacting legislation depending on what classification a piece of legislation discriminates upon, "the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* As discussed in Part A above, the prohibition on firearm possession those who have been "adjudicated as a mental defective," 18 U.S.C. § 922(g)(4), are presumptively valid. *See Heller*, 554 U.S. at 626 & 627 n.26.

Allen challenges § 922(g)(4) on the grounds that the NIAA impermissibly discriminates between federal and state mental adjudications. As a matter of background, the NIAA was entered into law on January 8, 2008, in an effort to improve the efficiency and effectiveness of the National Instant Criminal Background Check System (NICS) which is used to process Brady Act background checks across the country. *See* Pub. L. No. 110-180. One of the primary issues the legislation addressed was that the states were not voluntarily submitting background check information into the national database. *Id.* As part of the statute, Congress appropriated funds to help states establish a NICS reporting system. *Id.* Idaho was one of the first eight states that qualified for NIAA

funding and thereafter established I.C. § 66-356 to meet the demands of the NIAA. *See* I.C. § 66-356(2) (individual may petition magistrate division of the district court "to remove the person's firearms-related disabilities as provided in section 105(a) of P.L. 110-180"). Under both the NIAA and Idaho Code section 66-356(2), individuals who have been adjudicated for mental illness are given alternative remedies to petition for their gun ownership rights to be reinstated under federal and state law, so long as they are determined not to pose a threat to themselves or others. *Id.*

Allen focuses on an element in the NIAA that applies to federal departments and agencies that are responsible for adjudication of mental health issues. As part of the NIAA, the department or agency is not allowed to submit an individual's name into the NICS registry if " the adjudication or commitment, respectively, *has been set aside or expunged, or the person has otherwise been fully released or discharged from all mandatory treatment, supervision, or monitoring.*" 18 U.S.C. § 922 note (NIAA § 101(c)(1)(A)) (emphasis added).[4] In instances that meet the above criteria, the agency or

---

[4]Whereas the primary purpose of the NIAA was to improve the efficacy of the NICS background check system, it appears there was also an intention to improve access to those who had previously suffered from mental illness but had subsequently recovered–particularly military veterans. Speaking on behalf of the bill, Congressman Conyers explained:

> . . .In order to move the legislation to the floor, it was necessary to make some accommodations to incorporate the concerns of gun owners. The dean of the Congress, among other things, led this effort. Among the things that were changed is section 105 of the bill, which requires all States to adopt a procedure allowing those individuals who have been determined to suffer from a mental

**MEMORANDUM DECISION AND ORDER - 13**

department does not submit the individual's name into the NICS register, "and the adjudication or commitment, respectively, shall be *deemed not to have occurred* for purposes of subsections (d)(4) and (g)(4) of section 922 of title 18, United States Code." 18 U.S.C. § 922 note (NIAA § 101(c)(2)(B)) (emphasis added). In other words, federal agencies do not consider those who were evaluated and later released unconditionally to have been "adjudicated," a term that is otherwise not defined under § 922. In cases where an individual *is* determined to have been adjudicated, the agency that committed the individual must provide a program through which the individual can apply for relief from the disabilities imposed by the action. NIAA § 101(c)(2)(A)(i).

The NIAA also contemplates relief for those adjudicated as mentally deficient in state proceedings, although the mechanism for granting relief may be somewhat different than under a federal program. Under the basic tenets of federalism, Congress likely could not have mandated the exact protocol by which States administer their respective mental health adjudications. *See generally New York v. United States*, 505 U.S. 144, 160, 161 (1992). However, in states like Idaho that have complied with the NIAA and provided

---

> illness with an opportunity to purchase or possess a firearm at some point later in life. That's a pretty serious matter.
>
> Section 101 of the bill automatically restores the gun rights of military personnel who have been previously diagnosed with a mental illness, provided they are no longer undergoing any treatment or monitoring. . . .

110 Cong. Rec. H6339, H6342 (Jun 13, 2007) (Statement of Rep. John Conyers).

**MEMORANDUM DECISION AND ORDER - 14**

citizens an opportunity to petition to have their rights reinstated–the citizens who petition and are granted relief are given full recognition under federal law:

> (b) AUTHORITY TO PROVIDE RELIEF FROM CERTAIN DISABILITIES WITH RESPECT TO FIREARMS.—If, under a State relief from disabilities program implemented in accordance with this section, an application for relief referred to in subsection (a)(1) of this section is granted with respect to an adjudication or a commitment to a mental institution or based upon a removal of a record under section 102(c)(1)(B), the adjudication or commitment, as the case may be, is deemed not to have occurred for purposes of subsections (d)(4) and (g)(4) of section 922 of title 18, United States Code.

18 U.S.C. § 922 note (NIAA § 105(b)). Therefore, Allen may not allege that he has been divested of "equal protection of the laws" in a direct sense. Under both federal and state law, those deemed to have been "adjudicated as a mental defective" are prohibited from possessing weapons. 18 U.S.C. § 922(g)(4). By the same token, those who have been cleared by relevant federal *or* state authorities may petition to reinstate their right to possess firearms on an equal basis. 18 U.S.C. § 922 note (NIAA § 101(c)(1)(A); § 105(b)).

In reality, the gravamen of Allen's argument is that federal agencies and the State of Idaho may define "adjudicated as a mental defective" differently, which is not necessarily a proper basis for an Equal Protection claim. Unfortunately, one of the side effects of our federal system is that citizens must navigate a complex labyrinth of state and federal laws which, depending on the circumstance, may be applied inconsistently. *See generally Erie. R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).

Insofar as Allen has been properly adjudicated as a "mental defective" for

purposes of § 922(g)(4), both federal and Idaho law offer equal protection under the law by which he could have sought relief for illegally possessing a firearm. Defendant's motion to dismiss the indictment will therefore be denied.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Dismiss Indictment (Dkt. 22) is **DENIED**.

DATED: August 3, 2016

B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 16